IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

ANN-MICHELLE THURMOND,

    Plaintiff,

v.                                                                   Civil Action No. 3:17cv196

BAYVIEW LOAN SERVICING, LLC,

    Defendant.

## MEMORANDUM OPINION

This matter comes before the Court on Defendant Bayview Loan Servicing, LLC's ("Bayview") Motion to Dismiss,[1] filed pursuant to Federal Rule of Civil Procedure 12(b)(6).[2] (ECF No. 14.) Thurmond responded,[3] (ECF No. 18), and Bayview replied, (ECF No. 19). Accordingly, the matter is ripe for disposition. The Court exercises jurisdiction pursuant to 28 U.S.C. § 1331[4] and 28 U.S.C. § 1367.[5] The Court dispenses with oral argument because the

---

[1] Bayview provided Plaintiff Ann-Michelle Thurmond with appropriate notice pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975). (Mot. Dismiss 2–3, ECF No. 14.)

[2] Federal Rule of Civil Procedure 12(b)(6) allows dismissal for "failure to state a claim upon which relief can be granted."

[3] Thurmond filed her response on April 26, 2017, at least eight days past her deadline to respond. *See* E.D. Va. Loc. Civ. R. 7(K)(1) ("[A] *pro se* party is entitled to file a response opposing the motion and [it] must be filed within twenty-one (21) days of the date on which the dispositive or partially dispositive motion is filed . . . ."); *see also* E.D. Va. Loc. Civ. R. 7(H) ("[A]ll pleadings, motions, briefs, and filings of any kind *must* be timely filed with the Clerk's Office of the division in which the case is pending.") Bayview did not object to Thurmond's untimely filing and, given Thurmond's *pro se* status, the Court will consider her response in ruling on the Motion to Dismiss.

[4] "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Thurmond's Amended Complaint alleges violations of the Fair Debt Collections Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*

materials before the Court adequately present the facts and legal contentions, and argument would not aid the decisional process. For the reasons that follow, the Court will grant the Motion to Dismiss.

## I. Standard of Review

### A. Federal Rule of Civil Procedure 12(b)(6) Standard

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the

---

[5] The Court exercises supplemental jurisdiction over Thurmond's "Breach of Agreement" and "Uniform Commercial Code Violation" claims pursuant to 28 U.S.C. § 1367(a) ("[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy . . . .").

Although Thurmond contends that the Court has jurisdiction over these two state law claims pursuant to 28 U.S.C. § 1332, which confers subject matter jurisdiction when the parties are diverse and the amount in controversy exceeds $75,000, the allegations in Thurmond's Amended Complaint are insufficient to establish that diversity of parties exists. Thurmond alleges that she is domiciled in Virginia, and that Bayview is a company with its "princip[al] place of business . . . outside the state of Virginia." (Am. Compl. 2, ECF No. 9.)

Bayview, as its full name implies, appears to be an LLC. For the purposes of federal diversity jurisdiction, an LLC, unlike a corporation, is "not considered a citizen of its state of incorporation and principal place of business, but instead shares the citizenship of its members." *SunTrust Bank v. Village at Fair Oaks Owner, LLC*, 766 F. Supp. 2d 686, 688 (E.D. Va. 2011) (citing *Harvey v. Grey Wolf Drilling Co.*, 542 F.3d 1077, 1079–80 (5th Cir. 2008)). Although the Supreme Court of the United States has never expressly defined the term "member," it has "equated an association's members with its owners or 'the several persons composing such association.'" *Americold Realty Trust v. ConAgra Foods, Inc.*, 136 S. Ct. 1012, 1015 (2016) (quoting *Carden v. Arkoma Assocs.*, 494 U.S. 185, 196 (1990)). Relevant state law defines the individuals who constitute an LLC's "members." *See id.*

Thurmond's allegations regarding Bayview's citizenship insufficiently establish that diversity jurisdiction exists in this case. Accordingly, the Court exercises supplemental jurisdiction over Thurmond's state law claims, not diversity jurisdiction.

plaintiff. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993); *see also Martin*, 980 F.2d at 952. This principle applies only to factual allegations, however, and "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

The Federal Rules of Civil Procedure "require[] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (omission in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Plaintiffs cannot satisfy this standard with complaints containing only "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Id.* (citations omitted). Instead, a plaintiff must assert facts that rise above speculation and conceivability to those that "show" a claim that is "plausible on its face." *Iqbal*, 556 U.S. at 678–79 (citing *Twombly*, 550 U.S. at 570; Fed. R. Civ. P. 8(a)(2)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). Therefore, in order for a claim or complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003) (citations omitted).

### B. Obligation to Construe *Pro Se* Pleadings Liberally

District courts have a duty to construe *pro se* pleadings liberally. *Bracey v. Buchanan*, 55 F. Supp. 2d 416, 421 (E.D. Va. 1999). A *pro se* plaintiff must nevertheless allege facts sufficient to state a cause of action. *Id.* (citation omitted). The Court cannot act as a *pro se* litigant's

"advocate and develop, *sua sponte*, statutory and constitutional claims that the [litigant] failed to clearly raise on the face of [the] complaint." *Newkirk v. Circuit Court of Hampton*, No. 3:14cv372, 2014 WL 4072212, at *1 (E.D. Va. Aug. 14, 2014).

### C. Effect of Extrinsic Documents

"If, on a motion under Rule 12(b)(6) . . . , matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d); *see Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 260–61 (4th Cir. 1998); *Gay v. Wall*, 761 F.2d 175, 177 (4th Cir. 1985). However, "a court may consider official public records, documents central to plaintiff's claim, and documents sufficiently referred to in the complaint [without converting a Rule 12(b)(6) motion into one for summary judgment] so long as the authenticity of these documents is not disputed." *Witthohn v. Fed. Ins. Co.*, 164 F. App'x 395, 396–97 (4th Cir. 2006) (citations omitted). "[I]n the event of conflict between the bare allegations of the complaint and any attached exhibit . . . , the exhibit prevails." *Fayetteville Inv'rs v. Commercial Builders, Inc.*, 936 F.2d 1462, 1465 (4th Cir. 1991).

Thurmond attaches four exhibits—two of which are identical—to her response: (1) her "Demand for Acceptance Notice," addressed to the Chief Financial Officer of Bayview (the "Demand for Acceptance"), (ECF No. 18-1); (2) the Deed of Trust governing her loan (the "Deed of Trust"), (ECF No. 18-2); (3) an identical copy of the Demand for Acceptance, (ECF No. 18-3); and, (4) a March 24, 2016 letter addressed to Thurmond from M. Richard Epps, P.C., informing Thurmond that the firm has been retained to initiate foreclosure proceedings and advising Thurmond of the amount remaining on her loan (the "Epps Letter"), (ECF No. 18-4).

The Court will consider the Demand for Acceptance, (ECF No. 18-1), and the Deed of Trust, (ECF No. 18-2), in ruling on the Motion to Dismiss because both of those documents are sufficiently referred to in the Amended Complaint and neither party disputes their authenticity. The Court will not consider the Epps Letter in ruling on the Motion to Dismiss because, although neither party disputes its authenticity, Thurmond's Amended Complaint omits reference to that letter altogether.

## II. Procedural and Factual Background

### A. Summary of Allegations in the Complaint[6]

Thurmond's Amended Complaint contains numerous conclusory statements asserting that Bayview violated the law and her rights in multiple ways. At base, Thurmond appears to challenge various actions by Bayview related to her home mortgage loan and Bayview's supposed attempts to foreclose on it.

Thurmond alleges that, on April 6, 2016, she mailed Bayview a "Notice of Dispute and Validation of Debt," and that Bayview then failed to "send out the required 1692(g)[7] letter." (Am. Compl 2.) She contends that it is Bayview's practice "to maliciously, willfully, reckless,

---

[6] For purposes of this motion, the Court assumes the well-pleaded factual allegations in the Complaint to be true and views them in the light most favorable to Thurmond. *See Matkari*, 7 F.3d at 1134. The Court also will follow its duty to construe this *pro se* pleading liberally. *Bracey v. Buchanan*, 55 F. Supp. 2d 416, 421 (E.D. Va. 1999).

That said, the Court also will remember that a *pro se* plaintiff must nevertheless allege sufficient facts to state a cause of action. *Id.* (citing *Sado v. Leland Mem'l Hosp.*, 933 F. Supp. 490, 493 (D. Md. 1996)). The Court cannot act as a *pro se* litigant's "advocate and develop, sua sponte, statutory and constitutional claims" that the litigant failed to raise on the face of the complaint. *Newkirk v. Circuit Court of Hampton*, No. 3:14cv372, 2014 WL 4072212, at *1 (E.D. Va. Aug. 14, 2014).

[7] Construing Thurmond's Amended Complaint liberally, the Court interprets Thurmond as referring to 15 U.S.C. § 1692g, a statute in FDCPA. Section 1692g requires a debt collector to send the consumer a written notice containing certain specific information about the consumer's debt "[w]ithin five days after the initial communication with a consumer in connection with the collection of any debt." 15 U.S.C. § 1692g(a).

5

wantonly[,] and/or negligently ignore and refuse to follow the requirements of the FDCPA 1692(e)[8] by providing false and misleading representation, and state law."[9] (Am. Compl. 2.)

Thurmond further asserts that, on September 12, 2016, she sent Bayview a "Presentment (Notice of Demand for Acceptance) along with tendered payment (Promissory Note No. BV-082516) in the sum of $326,000.00" via registered mail. (Am. Compl. 3.) She claims that she "is a Secured Party Creditor for her Security Entitlement interest," and that Bayview "failed to comply with the terms of the Presentment and The Uniform Commercial Code 3-502[10] and 4-302[11] resulting in a Dishonor and breach of agreement." (Am. Compl. 3.)

She also contends that Bayview "repeatedly threaten[ed] the sale of [her] property by posting in the Richmond Times dispatch unjustly even after [Thurmond] provided material facts that [her account] was tendered and the debt discharged and that [Thurmond] is a secured party." (Am. Compl. 3.)

Thurmond sets forth three causes of action:

**Count One:** "F.D.C.P.A. Violations" – Thurmond alleges that Bayview violated "15 USC 1692, Communication in connection with debt collection"; "15 USC 1692(e)(a) False or Misleading Representation"; and, "15 USC 1692(g) Validation of debts," (the "FDCPA Violations Claim"). (Am. Compl. 4.)

---

[8] The Court construes this as a reference to 15 U.S.C. § 1692e, a section of the FDCPA that prohibits a debt collector from using "false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e.

[9] Unless otherwise noted, the Court retains the capitalization, punctuation, and syntax in Thurmond's Amended Complaint.

[10] Section 3-502 of the Uniform Commercial Code governs dishonor of a note.

[11] Section 4-302 of the Uniform Commercial Code dictates a bank's accountability for an item "presented to and received by a payor bank." U.C.C. § 4-302.

| | |
|---|---|
| **Count Two:** | **"Breach of Agreement"** – Thurmond sent Bayview a "Presentment," and Bayview "dishonored tender of payment via promissory note," (the "Breach of Agreement Claim"). (Am. Compl. 5.) |
| **Count Three:** | **"Uniform Commercial Code Violations"** – Bayview violated "Virginia Code 8.3-603 when they failed to respond causing a Tacit Acquiescence"; Bayview committed a "clear violation of U.C.C. 4-302" by "not appropriately returning the instrument of tender and/or settling the account within forty-eight hours"; and, Bayview "Dishonored the tender" in violation of Virginia Code 8.3A-502, (the "U.C.C. Violations Claim"). (Am. Compl. 6–7.) |

Thurmond asserts that all of Bayview's actions "were done with malice, were done willfully, and were done with either the desire to harm Plaintiff and/or with the knowledge that their actions would very likely harm Plaintiff and/or that their actions were taken in violation of the FDCPA." (Am. Compl. 2.)

Thurmond requests damages for Bayview's "numerous F.D.C.P.A violations," "discharge of the dishonored tender equal to the amount of tender," "satisfaction of mortgage lien associated with the tendered account and discharge within 7 days," and "to send notarized (Jurat) letters to remove any and all negative entries" on Thurmond's consumer credit reports. (Am. Compl. 8.)

### B. Procedural History

Thurmond initiated this action by filing a Complaint and a simultaneous Motion for Protective Order. (ECF Nos. 1, 2.) The Court denied the Motion for Protective Order, finding that Thurmond failed to make a clear showing of a likelihood of success on the merits of her claims. (Mar. 8, 2017 O. 3, ECF No. 4.) The next day, Thurmond filed a Motion for a Temporary Restraining Order and a Preliminary Injunction, (ECF No. 7), along with her Amended Complaint, (ECF No. 9). The Court denied Thurmond's Motion for a Temporary Restraining Order and a Preliminary Injunction, finding that Thurmond's Amended Complaint also failed to show a strong likelihood of success on the merits. (Mar. 9, 2017 O. 1, ECF

7

No. 12.) Thurmond served Bayview with a copy of the Amended Complaint, (*see* ECF No. 17), and Bayview filed a Motion to Dismiss, (ECF No. 14). Thurmond responded, (ECF No. 18), and Bayview replied, (ECF No. 19). For the reasons that follow, the Court will grant Bayview's Motion to Dismiss.

### III. Analysis: Motion to Dismiss

#### A. The Court Will Dismiss Count Two, the Breach of Agreement Claim[12]

Construed liberally and in the light most favorable to Thurmond, her "Breach of Agreement" Claim rests on her contention that she sent Bayview a "Presentment," and Bayview "dishonored tender of payment via promissory note" by not either: (1) returning the promissory note within the time Thurmond prescribed for Bayview to do so; or, (2) "crediting [Thurmond's] account or rendering the notice of satisfaction to [Thurmond]." (Am. Compl. 5.) As alleged, however, Thurmond was not entitled to presentment of the promissory note she sent Bayview, no dishonor occurred, and Bayview breached no agreement. The Court will dismiss Count Two, Thurmond's Breach of Agreement Claim.

##### 1. Legal Standard for "Presentment"

Title 8.3A of the Virginia Code governs negotiable instruments.[13] Va Code. § 8.3A-101 *et seq.* Under Title 8.3A, a "person entitled to enforce an instrument" may avail him or herself of "Presentment." *See* Va. Code § 8.3A-501.

---

[12] Thurmond's three claims all build on each other, and aspects of each claim relies on her assertion that Bayview "dishonored" her tender and inappropriately failed to credit her account in the amount of the "promissory note" she sent. Accordingly, the Court will analyze Thurmond's claims in the order that makes the most sense given the law Thurmond alleges Bayview violated, not in the order Thurmond lists the claims.

[13] A "negotiable instrument" is an unconditional promise to pay a fixed amount of money either on demand or at a set time. Title 8.3A sets forth three requirements for a document to qualify as a negotiable instrument. The document must: (1) be "payable to bearer or to order at

8

> "Presentment" means a demand made by or on behalf of a person entitled to enforce an instrument (i) to pay the instrument made to the drawee or a party obliged to pay the instrument or, in the case of a note or accepted draft payable at a bank, to the bank, or (ii) to accept a draft made to the drawee.

Va. Code § 8.3A-501(a). A "person entitled to enforce" an instrument is either: "(i) the holder of the instrument, (ii) a nonholder in possession of the instrument who has the rights of a holder, or (iii) a person not in possession of the instrument who is entitled to enforce the instrument pursuant to [inapplicable provisions]." Va Code § 8.3A-301. A negotiable instrument is "dishonored" when a presentment is properly made, and the instrument is not paid at either the time of presentment, or the day the instrument is payable, whichever is later. *See* Va. Code § 8.3A-502. In general terms, a "dishonored" negotiable instrument is one on which payment has been properly demanded, and the debtor has refused to pay.

### 2. Bayview Did Not "Dishonor" the Note Because Thurmond Was Not Entitled to "Presentment"

Thurmond's Amended Complaint fails to allege facts sufficiently qualifying her as a "person entitled to enforce" the instrument that she contends Bayview dishonored—the "promissory note" she sent to Bayview in an attempt to satisfy her loan. Thurmond asserts in a conclusory fashion that she "is a Secured Party Creditor for her Security Entitlement interest in [the promissory note] evidence under UCC FILE 16-10-19-5750-7." (Am. Compl. 3.) Thurmond, however, pleads no *facts* that enable the Court to draw the reasonable inference that she was entitled to enforce the promissory note she sent to Bayview. As such, Thurmond cannot

---

the time it is issued" or first comes into the holder's possession; (2) be "payable on demand or at a definite time"; and, (3) state no other requirements for payment. Va. Code § 8.3A-104(a).

9

avail herself of Presentment under the U.C.C. She therefore fails to state a claim that Bayview has "dishonored tender of payment via promissory note."[14] (*See* Am. Compl. 5.)

Moreover, even if Thurmond had validly availed herself of "Presentment" under the U.C.C., her "promissory note" did not qualify as a means of payment for her debt under the terms of her Deed of Trust. Thurmond's Adjustable Rate Notice (the "Rate Notice"), included in her Deed of Trust, provided that she would "make all payments under this Note in the form of *cash, check[,] or money order*." (Deed of Trust 18, ECF No. 18-2 (emphasis added).) Accordingly, even if Thurmond's "promissory note" constituted a valid instrument, it did not fall under one of the three acceptable forms of payment specified in Thurmond's Deed of Trust—the contract governing her mortgage loan. Thurmond could not satisfy her debt by tendering the "promissory note" as she attempted to do. Bayview, consequently, could not breach any agreement that Thurmond attempted to create.

The Court will dismiss Count Two, Thurmond's Breach of Agreement Claim.[15]

### B. The Court Will Dismiss Count Three, the UCC Violations Claim

Liberally construed, Thurmond asserts that Bayview violated the "U.C.C. in three ways. First, Bayview violated "Virginia Code 8.3-603 when they failed to respond causing a Tacit

---

[14] Bayview argues that Thurmond "appears to be pursuing the 'Redemptionist Theory,'" which "has been refuted on so many occasions that courts have levied sanctions on those plaintiffs who raise it." (Def.'s Reply 2–3, ECF No. 19.) The Court recognizes similarities between the legal theories Thurmond raises and those raised by the plaintiff in *McLaughlin v. CitiMortgage, Inc.*, 726 F. Supp. 2d 201 (D. Conn. 2010), on which Bayview relies in support of its assertion. The Court, however, need not address the extent to which Thurmond relies on so-called Redemptionist legal theories because, even construing the Amended Complaint liberally, Thurmond fails to state a claim that Bayview contravened any provisions of the statutes she invokes as violated.

[15] Thurmond realleges her arguments related to Presentment and Dishonor in Count Three, the "U.C.C. Violations" Claim. The Court will dismiss that aspect of Count Three for the same reasons.

Acquiescence, acceptance and crediting of the account was required of Bayview Loan Servicing, LLC as required by the tender remitted by [Thurmond]." (Am. Compl. 6.) Second, Bayview's failure to "appropriately return[] the instrument of tender and/or settl[e] the account within forty-eight hours is a clear violation of U.C.C. 4-302." (Am. Compl. 7.) Third, Bayview "has shown through acquiescence and in deed that it is apparent that Bayview Loan Servicing has Dishonored the tender by never returning it, never crediting the account, collecting on the note as specified and failing to provide any form of correspondence relative to the tender as per Virginia Code 8.3A-502." (Am. Compl. 7.)

None of Thurmond's allegations state a claim for a U.C.C. violation. The Court will dismiss Count Three of the Amended Complaint.

### 1. Thurmond Fails to State a Claim that Bayview Violated § 8.3A-603[16]

Section 8.3A-603 of the Virginia Code governs the tender of payment of negotiable instruments made to a person entitled to enforce the instrument. *See* Va. Code § 8.3A-603. Thurmond contends that Bayview violated this code by failing to respond to her Presentment and by failing to credit her account for the amount stated in her promissory note. Thurmond's allegations fail.

Section 8.3A-603(a) provides in full: "If tender of payment of an obligation to pay an instrument is made to a person entitled to enforce the instrument, the effect of tender is governed by principles of law applicable to tender of payment under a simple contract." Va. Code § 8.3A-603(a). As discussed above, Thurmond's "promissory note" did not qualify as payment for her debt the contract governing her mortgage loan, the Deed of Trust. Thurmond's Rate Notice

---

[16] Although Thurmond cites to "Virginia Code 8.3-603," the Court understands Thurmond to be referring to § 8.3A-603 because no § 8.3-603 exists in the Virginia Code, and because Thurmond quotes from § 8.3A-603.

provided that she would make all payments only in the form of cash, check, or money order. (Deed of Trust 18, ECF No. 18-2.) Thurmond's "promissory note" could not fulfill any of these three payment options under the contract governing her mortgage loan. Thurmond could not satisfy her debt by tendering the "promissory note." Thus, Bayview did not violate § 8.3A-603 by failing to credit her account in the amount of the promissory note.[17]

### 2. Thurmond Fails to State a Claim that Bayview Violated § 8.4-302[18]

Section 8.4-302 of the Virginia Code governs a payor bank's responsibility for the late return of items presented to and received by the payor bank. Thurmond contends that Bayview violated this section by failing to return her promissory note or settle her account within forty-eight hours. Thurmond's allegations founder.

Section 8.4-302 provides that a payor bank is accountable for the amount of:

> (1) a demand item, other than a documentary draft, . . . if the bank . . . retains the item beyond midnight of the banking day of receipt without settling for it or . . . does not pay or return the item or send notice of dishonor until after its midnight deadline; or[,]
>
> (2) any other properly payable item unless, within the time allowed for acceptance or payment of that item, the bank either accepts or pays the item or returns it and accompanying documents.

Va. Code § 8.4-302(a). The relevant section of the Virginia Code defines a "bank" as "a person engaged in the business of banking, including a savings institution, credit union, or trust company." Va. Code § 8.4-105(1). A "payor bank" is "a bank that is the drawee of a draft"—for example, the bank where one would cash a check. Va. Code § 8.4-105(3).

---

[17] As discussed above, Bayview had no duty to respond to Thurmond's Presentment because Thurmond had no entitlement to assert the Presentment.

[18] Section 8.4-302 of the Virginia Code is Virginia's analogous section to section 4-302 of the U.C.C.

12

The allegations in Thurmond's Amended Complaint belie any attempt to establish that Bayview constitutes a "payor bank" governed by § 8.4-302. Her Amended Complaint contains no facts indicating that Bayview is "engaged in the business of banking," or is a savings institution, credit union, or trust company. *See* Va. Code § 8.4-105(1). Moreover, Thurmond affirmatively asserts that Bayview "is a foreign company that engages in the business of collecting on consumer debts (i.e. a debt collector under the FDCPA)." (Am. Compl. 2.) She later restates her contention that Bayview is a "debt collector under the FDCPA." (Am. Compl. 4.) Because Thurmond fails to allege that Bayview is a bank, she cannot state a claim that Bayview violated § 8.4-302. That section applies only to banks.

Liberally construed and viewed in the light most favorable to Thurmond, she fails to plead facts sufficient to state a claim that Bayview violated the identified provisions of the U.C.C. The Court will dismiss Count Three, Thurmond's "U.C.C. Violations" Claim.

### C. The Court Will Dismiss Count One, the FDCPA Violations Claim

Construing Thurmond's Amended Complaint liberally, she points to three violations[19] of the FDCPA:

---

[19] In her Response in Opposition to the Motion to Dismiss, Thurmond references, for the first time, 15 U.S.C. § 1692d, arguing that Bayiew's "request for a newspaper advertisement for the sale of the property . . . in the Richmond Times Dispatch newspaper" on two different dates violated § 1692d. (Pl.'s Resp. 5, ECF No. 18.) Thurmond, of course, cannot add claims to her Amended Complaint in her Response. Regardless, the allegations in Thurmond's Amended Complaint fail to state a violation of § 1692d.

As relevant, § 1692d prohibits debt collectors from engaging "in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt," including "[t]he advertisement for sale of any debt to coerce payment of the debt." 15 U.S.C. § 1692d(4). Thurmond contends that Bayview "repeatedly threaten[ed] the sale of [her] property by posting in the Richmond Times Dispatch unjustly," (Am. Compl. 3), but she pleads no facts that could lead to the reasonable inference that any purportedly unjust advertising for sale of her property was "to coerce payment of the debt," as prohibited by § 1692d. Thus, even if Thurmond had properly alleged a violation of § 1692d in her Amended Complaint, that claim would fail.

(1) Bayview violated 15 U.S.C. § 1692c by communicating with Thurmond without her prior consent "to demand payment of debt subsequently after [it] received assignment of trust deed or servicing rights";

(2) Bayview violated 15 U.S.C. § 1692e by mailing Thurmond a "false and misleading payoff statement[] . . . on August 18, 2016"; and,

(3) Bayview violated 15 U.S.C. § 1692g by "refusing to verify and provide validation of the debt" after Thurmond sent Bayview a "notice of dispute and validation of debt on April 6, 2016," and by failing to send "the required 1692(g) notice within five days of contact."

(Am. Compl. 4.) As to each purported violation, Thurmond fails to plead facts that rise above speculation and conceivability to those that "show" a claim that is "plausible on its face." *Iqbal*, 556 U.S. at 678–79. The Court will dismiss Count One, Thurmond's FDCPA Claim.

### 1. Legal Standard: FDCPA Claims Generally

"'The FDCPA protects consumers from abusive and deceptive practices by debt collectors, and protects non-abusive debt collectors from competitive disadvantage.'" *Lembach v. Bierman*, 528 F. App'x 297, 301(4th Cir. 2013) (quoting *United States v. Nat'l Fin. Servs., Inc.*, 98 F.3d 131, 135 (4th Cir. 1996)). To prevail on an FDCPA claim, a plaintiff must allege that: (1) he or she was the object of collection activity arising from a consumer debt as defined by the FDCPA; (2) the defendant is a debt collector as defined by the FDCPA; and, (3) the defendant engaged in an act or omission prohibited by the FDCPA, such as using a false, deceptive, or misleading representation or means in connection with the collection of any debt. *See Moore v. Commonwealth Trs., LLC*, No. 3:09CV731, 2010 WL 4272984, at *2 (E.D. Va. Oct. 25, 2010) (citing *Blagogee v. Equity Trustees, LLC*, No. 1:10cv13, 2010 WL 2933963, at *5 (E.D. Va. July 26, 2010)).

## 2. Thurmond Fails to State a Claim for a Violation of 15 U.S.C. § 1692c

Relevant to Thurmond's claims and subject to various exceptions, § 1692c prohibits debt collectors from communicating with a consumer without a consumer's prior consent under the following circumstances:

(1) at any unusual time or place or a time or place known or which should be known to be inconvenient to the consumer. . . . ;

(2) if the debt collector knows the consumer is represented by an attorney with respect to such debt and has knowledge of, or can readily ascertain, such attorney's name and address . . . ; or[,]

(3) at the consumer's place of employment . . . .

15 U.S.C. § 1692c.

In support of her assertion that Bayview violated § 1692c, Thurmond contends only that Bayview "communicated with plaintiff without prior consent of the plaintiff to demand payment of debt subsequently after they received assignment of trust deed or servicing rights." (Am. Compl. 4.) This bare, conclusory allegation clearly fails to state a claim for a violation of § 1692c upon which relief can be granted.

First, the statement constitutes little more than a mere legal conclusion, which is "not entitled to the assumption of truth." *See Iqbal*, 556 U.S. at 679. Thurmond's claim contains no information about the type of communication, when it occurred, or any details about what the communication entailed. Her contention lacks sufficient factual matter to give Bayview "'fair notice of what the . . . claim is and the grounds upon which it rests.'" *Twombly*, 550 U.S. at 555 (omission in original) (quoting *Conley*, 355 U.S. at 47).

Second, even if Thurmond's allegation constituted more than a mere legal conclusion, she fails to state a claim based on the plain language of § 1692c. Section 1692c enumerates specific ways relating to the time, place, and manner in which debt collectors may not contact

15

consumers to collect debts unless the consumers have given their prior consent. *See* 15 U.S.C. § 1692c. Thurmond, however, asserts only that Bayview communicated with her without her prior consent; she pleads none of the prohibited circumstances. Section 1692c does not prohibit debt collectors from contacting consumers to collect debts *at all*, only under certain circumstances considered to be harassing. Thurmond alleges no communication by Bayview that violated § 1692c. She therefore cannot state a claim under that section of the FDCPA.

### 3. Thurmond Fails to State a Claim for a Violation of 15 U.S.C. § 1692e

Section 1692e broadly prohibits a debt collector from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. Relevant to Thurmond's claims, § 1692e specifically prohibits a debt collector from: (1) falsely representing "the character, amount, or legal status of any debt," 15 U.S.C. § 1692e(2)(A); (2) falsely representing that "nonpayment of any debt will result in . . . sale of any property . . . unless such action is lawful and the debt collector . . . intends to take such action," 15 U.S.C. § 1692e(4); and, (3) "threat[ening] to take any action that cannot legally be taken or that is not intended to be taken," 15 U.S.C. § 1692e(5).

Liberally construed, Thurmond charges that Bayview violated § 1692e in two ways. First, Thurmond alleges that Bayview violated § 1692e by mailing her a "false and misleading payoff statement reflect[ing] false representation of the character, amount[,] and legal status of the debt on August 18, 2016." (Am. Compl. 4.) Second, Thurmond contends that Bayview "repeatedly threaten[ed] . . . the sale of [Thurmond's] property by posting in the Richmond Times Dispatch unjustly" after she "provided material facts" that the account "was tendered and the debt discharged." (Am. Compl. 3.) Neither of Thurmond's asserted § 1692e violations state a claim.

First, both allegations constitute little more than legal conclusions, "not entitled to the assumption of truth." *See Iqbal*, 556 U.S. at 679. Thurmond's assertion that Bayview sent her a misleading payoff statement contains no facts about what Bayview's purportedly false representation stated regarding the "character, amount[,] and legal status" of Thurmond's debt, nor does it contain any facts about what Thurmond contends was the *actual* "character, amount[,] and legal status" of her debt. (*See* Am. Compl. 4.) As such, Thurmond's conclusory statement that Bayview sent her a "false and misleading payoff statement reflect[ing] false representation of the character, amount[,] and legal status of the debt on August 18, 2016," (Am. Compl. 4), fails to state a claim for relief. Thurmond's averment that Bayview violated § 1692e by advertising the foreclosure sale of her property after she "provided material facts" that the account "was tendered and the debt discharged," (Am. Compl. 3), also consists of legal conclusions unsupported by factual pleadings. Thurmond does not state when Bayview advertised the foreclosure sale of her property, nor does she identify specific information she provided to Bayview that would support her claim that her account "was tendered and the debt discharged." (*See* Am. Compl. 3.) Thurmond's assertions that Bayview violated § 1692e do not satisfy her burden to plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

Second, even if Thurmond's statements constituted more than legal conclusions, her contentions that Bayview violated § 1692e by falsely representing the status of her debt or by improperly advertising her property for foreclosure fail because those contentions rest on the premise that Thurmond had satisfied her debt. She pleads no factual content allowing the Court to draw the inference that she had in fact satisfied her debt. As discussed above, Thurmond's

attempt to discharge her debt by mailing Bayview a "promissory note" and a Demand for Acceptance do not qualify as payment or discharge of her debt. Thus, even drawing the inference that Bayview's supposed false statements failing to report to Thurmond that her account "was tendered and the debt discharged," (*see* Am. Compl. 3), Thurmond cannot state a claim because she pleads no facts supporting the inference that her debt was in fact discharged.

### 4. Thurmond Fails to State a Claim for a Violation of 15 U.S.C. § 1692g

Section 1692g requires debt collectors to send specific information to consumers under certain circumstances. Liberally construed, Thurmond alleges that Bayview violated two provisions of § 1692g. First, § 1692g(a) (the "Initial Communication Requirement") requires that, within five days after "the initial communication with a consumer in connection with the collection of any debt," a debt collector must "send the consumer a written notice containing . . . the amount of the debt; . . . the name of the creditor to whom the debt is owed," and statements related to disputing the debt and learning the identity of the original creditor. 15 U.S.C. § 1692g(a). Second, § 1692g(b) (the "Validation Requirement") instructs that if, within thirty days after receiving the initial communication, the consumer "notifies the debt collector in writing . . . that the debt, or any portion thereof, is disputed," the debt collector must "cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment" and mails that verification to the consumer. 15 U.S.C. § 1692g(b).

Thurmond's Amended Complaint contains two statements related to her allegation that Bayview violated the Initial Communication Requirement. First, Thurmond asserts that "[a]fter the initial communication, [Bayview] did not sent out the required 1692(g) letter to the plaintiff." (Am. Compl. 2.) Second, Thurmond contends that Bayview "[r]efus[ed] to send the required

1692(g) notice within five days of contact so that Plaintiff would be informed of Plaintiff's rights." (Am. Compl. 4.) Regarding Bayview's purported violation of the Validation Requirement, Thurmond contends only that Bayview "refus[ed] to verify and provide validation of the debt . . . after [Thurmond] served upon [Bayview] notice of dispute and validation of debt on April 6, 2016." (Am. Compl. 4.) Thurmond's conclusory statements related to Bayview's supposed violations of § 1692g contain no facts and constitute little more than legal conclusions, which are "not entitled to the assumption of truth." *See Iqbal*, 556 U.S. at 679. They fail to satisfy Thurmond's burden to plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). They do not state a claim for a violation of § 1692g.

Because Thurmond fails to plead facts sufficient to state a claim that Bayview violated the FDCPA, the Court will grant Bayview's Motion to Dismiss. Count One, alleging violations of the FDCPA, will be dismissed.

### IV. Conclusion

For the foregoing reasons, the Court will grant the Motion to Dismiss. (ECF No. 14.) An appropriate Order shall issue.

/s/
M. Hannah Lauck
United States District Judge

Date: 12/12/17
Richmond, Virginia